[Civ. No. 4268. First Appellate District, Division Two.—November 8, 1922.]

JESSIE A. WHITE et al., Plaintiffs, v. HENRY KIRCH-MANN, Sr., et al., Defendants; LAUREN B. LA BARRE et al., Appellants, v. ANNA COFFER, Respondent.

[1] TRUSTS—DEATH-BED INSTRUCTIONS — EVIDENCE—FINDINGS — JUDGMENT.—In this action to enforce alleged trusts in certain personal property, based upon alleged death-bed instructions, the evidence fully supported the findings of the trial court in favor of the defendants and against the plaintiffs, and those findings supported the judgment in favor of the defendants.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Henry C. Gesford, Judge. Affirmed.

The facts are stated in the opinion of the court.

Marion Weston Cottle and Goldman & Altman for Appellants.

Hugo D. Newhouse and Russell P. Tyler for Respondent.

STURTEVANT, J.—This is an action brought to enforce certain alleged trusts in certain personal property. The defendants had judgment in the trial court and two of the alleged beneficiaries have appealed under section 953a of the Code of Civil Procedure.

[1] Prior to her death Jane Sanders had become the owner of bonds of the federal government and of certain corporations and had said bonds on deposit in her safe-deposit box. It was the theory of the alleged beneficiaries that she had attached to some of the securities written directions indicating to whom such securities should be delivered in the event of her death, and that on the evening before her death she called to her side the defendant, Anna Coffer, and requested the said Anna Coffer to send certain of the securities to the individuals whose names were marked on, or according to the written directions attached to each of said securities, and that Anna Coffer accepted

the trust and agreed to comply with the directions of the trustor. The allegations of the plaintiffs' complaint setting forth the foregoing theory were denied by the defendants in their answers. On the trial of the case the plaintiffs relied on the testimony of Anna Coffer to prove their case. After the case had been fully tried and submitted the trial court decided the case against the plaintiffs and made findings both general and specific in which it found the facts in favor of the defendants and against the plaintiffs. In their brief the appellants contend that the evidence shows without conflict that the allegations of the amended complaint are true and that the findings to the contrary are unsupported by evidence. These contentions are not supported by the record.

As far back as 1910 or 1911 Mrs. Sanders had become the owner of several of the bonds which were in her box at the time of her death. Each bond was in the sum of one thousand dollars, and there were nine bonds of the Great Western Power Company, three of the Pacific Gas and Electric, two of the City Electric, and one California Unifier. The bonds at that time were in the safe-deposit box, to which Mrs. Sanders had a key and Anna Coffer also had a key. Anna Coffer testified that Mrs. Sanders gave her the bonds in the year 1910 or 1911, and that the donee demurred to accepting the gift. "When I got those bonds I made a fuss; I did not want to take them from her, and she cried, and she said she wanted me to have them because of what I had done for her husband during his illness. So I said, 'I will never take them, unless if you need them you take them back.' Before her death in 1918 Mrs. Sanders had acquired other bonds of the federal government and all of the bonds were in the safe deposit box." The night before her death in the hospital Mrs. Sanders said to Mrs. Coffer, "I took those bonds and marked them. Will you send them the way I marked them?" To that request Mrs. Coffer testified that she did not give an answer but that her reply to Mrs. Sanders was in the nature of requesting her to preserve her strength. She further testified that Mrs. Sanders did not indicate the specific articles that were marked, nor how they were marked; in short, her testimony was to the effect that she neither accepted nor refused to accept the alleged trust.

She further testified that after the death of Mrs. Sanders
she and the executor, Mr. Kirchmann, went to the safe-
deposit box and examined the contents. They found two
Liberty bonds, each for one thousand dollars, and to
which was attached a paper bearing these words: "Lauren
La Barre, 2704 Bedford Avenue, Brooklyn, N. Y." On
May 27, 1918, those two bonds were transmitted by regis-
tered mail to Mr. La Barre at the above address. The tes-
timony did not develop the fact that any other bond or
bonds were marked, but there was in the box a card, ad-
mittedly in Mrs. Sanders' handwriting, but not signed, on
which appeared these words: "Give $5000 (five thousand)
of this to Lauren La Barre, also $5000 (five thousand) to
Kenneth La Barre." There was a package in the box
marked for delivery to Ed Donaldson; there was an en-
velope on which was written, "Walter Scott's property."
That envelope and its contents was forwarded to Mr. Scott.
As we understand the record, the Donaldson package was
sent to Donaldson, but there is some question as to whether
it was sent in the original envelope or otherwise. All of
the bonds that were in the safe deposit box were sent to
the individuals accordingly as the bonds were marked.

Mr. Kirchmann was called as a witness and testified that
he went to the safe-deposit box the day after Mrs. Sanders
died: that Anna Coffer, Edward Sanders and Mrs. Edward
Sanders went with him, and on that occasion they removed
the will and a letter addressed to the witness. On the same
afternoon, or the next day, the witness and Anna Coffer
went to the box and at that time the witness removed the
bonds from the box. He testified that he took the bonds to
his office in the Merchants Exchange Building. At that
time the Donaldson bonds were in the envelope, others had
small slips of paper attached to them with their names, not
the addresses, and were not in envelopes. The bonds were
sent according to the way they were addressed, or the way
the slips of paper were attached. After the bonds had been
sent there were no bonds left. The witness testified that
the card found in the box, and hereinabove fully set forth,
was with a lot of miscellaneous papers such as tax bills,
citizenship papers, etc., but was not attached to any bond
or bonds, and there were no bonds in the envelope in which
the card was found.

The evidence fully supports the findings and the findings support the judgment. The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 4, 1923.

All the Justices present concurred.